**Thomas O'GRADY, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**No. CV 78–2558.**

United States District Court, E.D. New York.

May 24, 1984.

Scheine, Fusco & Brandenstein by Victor Fusco, New York City, for plaintiff.

Raymond J. Dearie, U.S. Atty. by Reuben Koolyk, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action brought under Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. Section 405(g), to review a final determination by the Secretary of Health and Human Services ("Secretary"), terminating plaintiff's disability benefits. The parties now cross-move for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P.

## I.

Plaintiff is forty-one years old and holds a high school diploma. He served in the army and has worked as a mail carrier. From 1965 to 1978, when he retired as disabled, plaintiff was a police officer in the New York City Police Department. On April 4, 1974, while on duty as a motorcycle patrolman he was thrown from his motorcycle when it was struck by an automobile. Plaintiff's back was injured in the accident and as a result plaintiff was hospitalized from April 4 to 24, 1974. He was rehospitalized for the same injuries from August 30 to September 7, 1975.

In 1975 plaintiff was awarded disability benefits beginning April 1974 based on the back injuries received in the accident. Subsequently, the Secretary determined that plaintiff's disability had ceased as of September 1976 and terminated benefits. The plaintiff requested a hearing, which was held on March 8, 1978. On April 29, 1978, the Administrative Law Judge ("ALJ") found that plaintiff's disability had ceased. That determination was approved by the Appeals Council and adopted by the Secretary. Plaintiff then filed an appeal in the U.S. District Court for the Eastern District of New York seeking review of the Secretary's decision. On September 14, 1979 plaintiff and the U.S. Attorney stipulated that the case should be remanded to the Secretary for further consideration. The Appeals Council vacated the decision of the ALJ and its denial of plaintiff's request for review, and remanded the case to ALJ Schwartz for a supplemental hearing. That hearing was held on May 22, 1981, and in a decision dated July 31, 1981 the ALJ determined that the plaintiff was disabled in September 1976 by a herniated lumbar disc, cervical disc narrowing and muscle spasms with evidence of hypertrophic changes. In finding that plaintiff was entitled to benefits, the ALJ found that his condition had retrogressed since 1976 to include muscle atrophy of the en-

tire cervical and lumbar region, nerve root involvement, and progressive anxiety neurosis.

In a somewhat unusual action the Appeals Council rejected the ALJ's determination. Instead, on review the Council determined that the plaintiff had cervical and lumbar spine syndrome and anxiety neurosis, but that the plaintiff's disability ceased as of September 1976. The Council found that as of that date plaintiff's impairment and pain precluded his return to police work, but did not preclude sedentary work that allowed alternate sitting and standing without prolonged standing, heavy lifting, or frequent bending. This became the final decision of the Secretary and it is this determination from which the plaintiff now appeals.

## II.

The record indicates that Dr. Polifrone, a neurosurgeon, has been Mr. O'Grady's treating physician since 1974. Plaintiff sees Dr. Polifrone on the average of once a month. In November 1976 the doctor diagnosed marked cervical muscle spasms with x-rays showing narrowing at the C5–6 interspace. He also found lumbar muscle spasm and lumbar pain with radiation into the left leg. In addition, plaintiff had general complaints of headache and neck pain. The doctor assessed plaintiff's functional capacity as severely restricted with ability to bend less than fifty percent normal, walking, sitting and standing restricted to short periods of less than an hour, and no lifting, pulling, pushing or climbing. He also noted possible root nerve involvement. By the end of 1977 the treating physician found evidence of cervical radiculitis in the right arm with pain and numbness in the first three fingers. This was confirmed by a positive EMG study, and possible alternative diagnosis of carpal tunnel syndrome or root nerve involvement were noted. Again, restricted ability to bend and left leg pain were observed.

In 1978 Dr. Polifrone's reports indicate a severe cervical sprain and lumbar injury and continued use of a cervical collar or neck brace. Through 1979, 1980 and 1981 the doctor's records show a herniated lumbar disc and continued pain in the lower back radiating down the legs, continued neck pain with limited motion and numbness and pain radiating down the right arm. Use of the cervical collar, analgesics, and rest are prescribed as treatment. In addition, Dr. Polifrone notes the presence of muscle spasms, limited movement, an EMG showing root nerve involvement, C–6 and foot hypaglesia and reduced Achilles tendon reflex. At the 1978 hearing Dr. Polifrone testified, consistent with his reports, that plaintiff was disabled.

Plaintiff was also examined and treated by an orthopedist, Dr. Stephen Zolan, beginning in 1981. In his report he noted the results of a 1980 CAT scan that showed a herniated disc between L4–5 and the beginnings of herniation between L5–S1. He also noted multiple EMG's and nerve conduction studies, which were variously interpreted as normal and abnormal. In addition to the numbness in the two fingers of the right hand and pain in the left leg, he found loss of sensation in the left shoulder area. The orthopedist observed that neck pain prevented plaintiff from holding his head up in a normal position. Dr. Zolan found severe muscle atrophy in the neck and back and spasms of the cervical muscles.

Dr. Zolan stated that plaintiff could not stand or sit for more than 15 minutes at a time, could not drive or take public transportation, could not push, pull, bend, stoop, squat, crawl or climb. On the Physical Capabilities Evaluation the doctor checked off no capabilities. In fact, in Dr. Zolan's opinion Mr. O'Grady is 100% disabled. After reviewing the earlier medical records Dr. Zolan concluded that there had been a continuous disability from 1974 and opined that plaintiff suffered from a disability listed under Section 1.05 C of Appendix 1, 20 C.F.R. Part 404 Subpart P. The doctor also reported his observations of plaintiff's slow, careful, "gingerly" movements and his need for aid in removing his socks and shoes when disrobing for examination. Dr.

Zolan's reports and testimony indicate that he made a thorough review of plaintiff's history, medical records and examining physician's reports. At the 1981 hearing he testified that while his current diagnosis was discogenic pain, the medical reports indicate to him that during the period including 1976 and 1977 plaintiff had a herniated lumbar disc.

Also in the record are reports from Dr. Melvin Schulan, a neurologist and board-certified psychiatrist, and Dr. Arthur Meisel, a psychiatrist. Both doctors examined the plaintiff at his attorney's behest. In 1980 Dr. Meisel ran a battery of psychological tests, specifically the Wechsler Adult Intelligence Scale, the Bender Visual Motor Gestalt Test, the Wide Range Achievement Test (reading), the Rorschack Ink Blot Test, the Thematic Apperception Test, and the Mental Status Examination. These tests indicated anxiety, depression, and emotional decompensation consistent with post-traumatic syndrome. The plaintiff showed severely impaired social, personal and vocational functioning; in short, depression associated with chronic invalidism. Dr. Meisel concluded that prognosis was guarded for recovery of personal, social, and vocational functioning (Tr. 387).

In 1981 Dr. Schulman examined Mr. O'Grady and diagnosed chronic, severe and fully disabling anxiety neurosis with anxiety attacks, depression, hyperirritability, and withdrawal. He concluded that this was the direct result of plaintiff's injuries and that prognosis for improvement is nil. Dr. Schulman opined that plaintiff was disabled under Section 12.04 A 1–4, 7 a and b of the listings, 20 C.F.R. Part 404 Subpart P, Appendix 1.

The record contains a brief report from the Police Pension Fund Medical Board of January 1978 noting cervical nerve root involvement and recommending disability retirement, a short 1974 report from Dr. Joseph Ransohoff finding plaintiff totally incapacitated and recommending a myelogram and surgery, x-ray results showing lumbar scoliosis, a 1977 report from Dr. Siwinski, and a 1976 report from Dr. Zolly

Silberman. Both these last reports were Social Security Administration referrals for examination.

Dr. Silberman found a possible herniated lumbar disc and mild residual pain from a cervical sprain on his single consultative examination. He recommended a myelogram and surgery. He concluded that the plaintiff could "sit for a limited period of time," (Tr. 175), was able to stand for one to two hours, and should avoid heavy lifting or frequent bending. The x-ray report that Dr. Silberman received from Dr. Melvyn Weiner, a board-certified radiologist, indicated a straightening of the curvature of the cervical spine, "possibly due to muscle spasm," (Tr. 172) and scoliosis of the lumbar spine. Dr. Siwinski's report (Tr. 179–80) briefly concludes that plaintiff can do light work as long as he avoids bending and stooping. He did not address or detail plaintiff's capacity to sit, stand, or walk.

At both hearings Mr. O'Grady testified to his pain. At the 1981 hearing he detailed the locations and types ranging from low throbbing ache to sharp, shooting pain. Both he and his wife described his almost complete inactivity and social withdrawal, including near extinction of their sexual relationship. Mr. O'Grady stated that he avoids driving and any activity that might jolt him, as this can cause intensified, severe pain. He no longer uses his upstairs bedroom, but sleeps on the ground floor. At Dr. Polifrone's direction he takes Valium to relieve pain and at Dr. Zolan's direction he takes Robaxin. On doctor's instruction he has ceased to use Tylenol with codeine. Using Valium makes the plaintiff drowsy and he lies down and sleeps when he takes it to relieve pain. In fact, lying down and resting is his primary means of reducing pain. Finally, plaintiff testified that he can stand and sit for only twenty minutes at a time and must alternate these positions regularly. He can walk one to three blocks at a slow pace and use of his right hand can cause tingling and numbness. He does no chores, no lifting or bending. The plaintiff also testified to the effect that his condition and pain can vary

from day to day, depending on events, his activity, and dampness of the weather.

The Court notes that among the treating and consulting physicians there is conflict over the need for a myelogram and disc surgery or conservative treatment. There is apparent disagreement over the advisability of plaintiff's constant use of the neck brace and the efficacy of exercise. These, however, are problems common to sufferers of back disease.

The record also contains the 1978 hearing testimony of vocational expert Dr. Cornehlsen. He testified to the effect that while someone with plaintiff's lumbar and cervical problems and resulting *moderate* pain could do sedentary work, those problems coupled with severe pain that required bed rest for control and an inability to sit for an hour at a time would make the sufferer unemployable (Tr. 123–26).

### III.

The Secretary concedes that the plaintiff cannot perform his past relevant work as a police officer. It falls to the Secretary to show that the plaintiff can perform some less demanding, gainful employment. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). In this instance the Secretary has concluded that his impairments allow him to engage in sedentary work.

The issue before the Court is whether the Secretary's determination, and therefore her reversal of ALJ Schwartz's decision, is based on substantial evidence on the record. The Secretary's determination that a claimant is not disabled is conclusive if supported by substantial evidence on the record. *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978). Substantial evidence is defined as more than a mere scintilla, it is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

In reaching its determination the Appeals Council relied on Dr. Silberman's report, which it concluded stated that plaintiff could sit a "reasonable" period of time.

The Council's opinion also considered the medical testimony and reports, which were termed conflicting, and concluded that plaintiff had cervical and lumbar spine syndrome, anxiety neurosis, and mild to moderate pain, which did not preclude sedentary work.

 It has been established in this Circuit that subjective pain may be a basis for showing a disability. *McLaughlin v. Secretary*, 612 F.2d 701 (2d Cir.1980). It is for the Secretary to assess the credibility of the claimant and weigh his testimony as to pain with the objective medical evidence, but she may not substitute her own judgment as to the severity of the pain without evidentiary support. *Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 643 (2d Cir.1983). Nor can she pick and choose what evidence she uses in determining the existence and severity of pain. *Rivera v. Schweicker*, 717 F.2d 719, 724 (2d Cir.1983). The Secretary relies heavily on the fact that plaintiff uses only Valium for pain and on the variations in the findings of several doctors over a five year period. Apparently some doctors find muscle spasms they term severe, others find spasms they term moderate. In 1981 Dr. Zolan finds atrophy, in earlier years other doctors find none. Nevertheless, there are objective clinical findings of spasms, atrophy, disc herniation shown by CAT scan, scoliosis, and a straightening of the curvature of the cervical spine indicative of spasms. Such findings support plaintiff's claim of debilitating pain. *Rivera v. Schweicker*, 717 F.2d at 725. In addition, plaintiff found it necessary to stand up part way through the 1978 hearing to relieve discomfort (Tr. 124). And ALJ Schwartz who had the chance to observe the plaintiff first hand and assess his credibility apparently found him believable. The Court finds the Secretary's parsing of the evidence inadequate and concludes that her determination that plaintiff's pain is mild to moderate is not supported by substantial evidence on the record as a whole.

■ Similarly, the Secretary has erred in weighing and evaluating the reports and testimony of the physicians. In short, she cannot see the forest for the trees. Instead of addressing the totality of the doctors' evidence the Secretary picks statements made over a five year period and poses them in seeming contradiction to each other. While Doctors Zolan and Polifrone differ as to the existence of a herniated disc at different periods, muscle atrophy, and severity of spasms, both clearly find plaintiff to be suffering from severely disabling lumbar and cervical back disease. There is also apparent agreement that plaintiff suffered from a herniated lumbar disc in 1976–77, the period of benefit termination. Both these physicians have treated the plaintiff, and a treating physician's opinion is binding on the Secretary unless contradicted by substantial evidence to the contrary, *Singletary v. Secretary of HEW*, 623 F.2d 217, 219 (2d Cir.1980), and in any event it is entitled to considerable weight, *Carroll v. Secretary*, 705 F.2d at 642. None of the consulting physicians substantially contradict Doctors Zolan and Polifrone. Dr. Silberman finds evidence of a herniated disc in 1976 and, as Dr. Zolan pointed out, Dr. Siwinski is a radiologist, not an orthopedist or neurosurgeon, and therefore his brief, conclusory report is not entitled to great evidentiary weight. Finally, there is nothing on the record that contradicts Dr. Schulman's and Dr. Meisel's findings of disabling anxiety neurosis. Those findings were supported by clinical test results. The Secretary's reliance on a showing of plaintiff's good intelligence is inapposite in addressing his emotional impairment. The Secretary also erred in ignoring the combined effect of co-existent physical and psychological impairments. *Dressel v. Califano*, 558 F.2d 504, 507 (8th Cir.1977).

■ Most egregiously, the Secretary's finding that plaintiff is capable of sedentary work is not supported by even a scintilla of evidence. The reliance on a determination by Dr. Silberman that plaintiff could sit for a reasonable time is a distortion. Dr. Silberman said plaintiff could sit for a "limited period". More to the point, nothing in evidence indicates that the plaintiff can sit for more than an hour. The "concept of sedentary work requires substantial sitting." *Carroll v. Secretary*, 705 F.2d at 643. Sedentary work generally involves sitting for six hours out of an eight hour workday. The term "sedentary" in the Social Security Regulations has the same meaning as it has in *The Dictionary of Occupational Titles*, 20 C.F.R. 404, 1567 (1983). That authority defines sedentary work to comprise a capacity to sit for *at least* six hours in an eight hour work day. There is nothing in the record that attributes to plaintiff the ability to sit for six hours.

Finally, the Secretary miscasts the testimony of the vocational expert. At the 1978 hearing the vocational expert in the context of answering a hypothetical question stated that a person with plaintiff's lumbar and cervical impairments who suffered no more than moderate pain and required no bed rest to control it could do sedentary work. As concluded earlier, the Secretary's determination that plaintiff has no more than moderate pain is not supported by substantial evidence. Furthermore, the uncontradicted evidence on the record is that the plaintiff must use bed rest to control his pain. The existence of severe pain and the need for bed rest are exactly the factors the vocational expert declared would make the plaintiff unemployable.

### IV.

The Court concludes that the Secretary's determination terminating plaintiff's disability benefits effective September 1976 is not supported by substantial evidence on the record. Accordingly, that determination is reversed and plaintiff's motion is granted.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff, reinstating disability benefits effective September 1976.

SO ORDERED.