and hop-related items near the time of contracting or in the specified future.

 While FMB urges that the "redocumented" contracts evince the parties' intent to arbitrate disputes relating to all contracts, the Court disagrees. The redocumented contracts explicitly incorporate an arbitration provision, a change that would not be necessary if, as FMB seems to argue, the arguably unchanged continuity of the parties' ongoing relationship clearly demonstrates an agreement to arbitrate all disputes related to the contracts. The record reflects no agreement by the parties to amend earlier contracts to provide for arbitration of disputes, and counsel did not enter into such an agreement during oral argument. *Cf. Mitsubishi, supra,* 105 S.Ct. at 3357 (noting some courts recognize an agreement to arbitrate may be acceptable even if entered into after the dispute arises).

 Finally, the fact that the proceedings may be complex when arbitration and litigation are pursued contemporaneously is not alone a sufficient basis on which to require arbitration of all disputes. *See Byrd, supra* (requiring arbitration of state law claims while federal securities claim remained the subject of litigation); *see also Mitsubishi, supra,* 105 S.Ct. at 3351 n. 7 (noting the district court retained jurisdiction over some claims while requiring arbitration of other claims).

Accordingly, movants' motion to dismiss or stay for purposes of arbitration will be granted in part and denied in part. To the extent these motions raised issues unrelated to arbitration, the motions remain under consideration.

### ORDER

A memorandum dated this day is hereby incorporated into and made a part of this order.

IT IS HEREBY ORDERED that the motions to dismiss or stay this case for arbitration proceedings be and the same are granted in part and denied in part as specified herein.

IT IS HEREBY FURTHER ORDERED that this action is dismissed and the parties are directed to pursue arbitration only as to the antitrust claims directed to each post–1981 contract that contains an arbitration clause. This Court retains jurisdiction over the antitrust claims directed to any pre–1983 contract that does not contain an arbitration clause.

The motions remain under consideration to the extent they raise issues unrelated to arbitration.

**Frank ODIERNO, Plaintiff,**

v.

**Otis R. BOWEN, Secretary, Health and Human Services, Defendant.**

**No. 85 Civ. 3713 (RJW).**

United States District Court,
S.D. New York.

Feb. 20, 1987.

Freedman, Wagner, Tabakman & Weiss, New City, N.Y., for plaintiff; Lewis B. Insler, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Neil S. Mann, Sp. Asst. U.S. Atty., of counsel.

ROBERT J. WARD, District Judge.

Plaintiff Frank Odierno brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act") as amended, 42 U.S.C. §§ 405(g), 1383(c)(3), for judicial review of a final determination by the Secretary of Health and Human Services (the "Secretary" of "HHS") denying his application for supplemental security income based on disability ("SSI") (hereinafter "disability benefits"). The Secretary determined that plaintiff was not under a "disability" within the meaning of the Act because plaintiff's impairments did not prevent him from performing his past relevant work as a bartender. Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. The Secretary has cross-moved to remand the case to the Social Security Administration ("SSA") for redetermination in light of the revised mental impairment guidelines promulgated by the Secretary subsequent to the decision on Odierno's application. For the reasons to follow, the Court grants plaintiff's motion for judgment on the pleadings in part and denies it in part. As modified by this opinion, the Court grants the Secretary's motion to remand.

### BACKGROUND

Plaintiff was born August 28, 1929 and he is presently fifty-seven years old. He left high school before graduating, at the age of sixteen or seventeen, to support his mother and father. Odierno subsequently served in the military and since then has

held a variety of jobs. On October 21, 1983 plaintiff first applied for disability benefits on the basis of chronic heart disease, pulmonary conditions including emphysema, and Meniere's disease.[1] He alleged the onset of disability as August 1982. Odierno has not worked since August 1982 when, as a result of an acute episode of Meniere's disease, he left a job fabricating jet engine parts. Prior to that job, plaintiff had worked most recently as a hotel bartender from 1965 to 1975. After the Secretary denied his application initially and on reconsideration, plaintiff timely requested a hearing. Administrative Law Judge Irwin M. Portnoy (the "ALJ") held the hearing in two sessions on July 30 and November 6, 1984.

By a decision dated November 27, 1984, the ALJ found that plaintiff could perform his past relevant work as a bartender and that he therefore did not suffer from a disability as that term is defined in the Act. This decision became the Secretary's final determination on March 13, 1985 when the

Appeals Council denied plaintiff's request to review the ALJ's decision. Odierno appealed to this Court and now seeks judgment on the pleadings. The Secretary has cross-moved to remand this case to be redetermined in light of newly revised guidelines on mental impairments.

## DISCUSSION

### I. The Disability Benefits Reform Act of 1984.

Odierno applied for disability benefits at least in part on the basis of mental impairments, including dizziness, hearing loss, and memory lapses, resulting from Meniere's disease. Because the present suit appeals an unfavorable decision in a case involving a claim of mental impairment, the Secretary argues for a remand in order properly to assess according to the newly revised Listing of Impairments, see 20 C.F.R. § 404 subpt. P, app. 2, the impact of his symptoms on Odierno's ability to hold a job in the competitive marketplace.[2]

---

1. Meniere's disease is

 [a] disorder characterized by recurrent prostrating vertigo, sensorineural hearing loss, and tinnitus, associated with generalized dilation of the membranous labyrinth (endolymphatic hydrops).

 The etiology of Meniere's disease is unknown, and the pathophysiology is poorly understood. The attacks of vertigo appear suddenly, last from a few to 24 h, and subside gradually. The attacks are associated with nausea and vomiting. The patient may have a recurrent feeling of fullness or pressure in the affected ear. The hearing in the affected ear tends to fluctuate, but over the years the hearing progressively worsens. The tinnitus may be constant or intermittent, and may be worse before, after, or during an attack of vertigo. Although only one ear is usually affected, both ears are involved in 10 to 15% of patients.

 The Merck Manual of Diagnosis and Therapy § 17 Ch. 199 at 1957–58 (14th ed. 1982).

2. Congress passed the Social Security Disability Benefits Reform Act of 1984 (the "Disability Reform Act"), P.L. 98–460, 98 Stat. 1794, to clarify statutory guidelines for determining qualification for disability benefits. In section 5(c) Congress directed the Secretary within nine months to revise the Social Security Administration's Listing of Mental Impairments and to reevaluate the agency's procedure for predicting the ability to work of mentally impaired individ-

uals. The Secretary published the new regulations August 28, 1985. See 50 Fed.Reg. 35,065 (1985) (codified at 20 C.F.R. § 404 subpt. P app. 1). In the interim, the Secretary was to make determinations of disability on the basis of mental impairments in accordance with then current guidelines, but section 5(c)(1) directed that unfavorable decisions reached after the bill's enactment on October 9, 1984 were to be reviewed under the newly revised regulations. That section states, in pertinent part, as follows:

> Any initial determination that an individual is not under a disability by reason of a mental impairment and any determination that an individual is not under a disability by reason of a mental impairment in a reconsideration of or hearing on an initial disability determination made ... after the date of the enactment of this Act and prior to the date on which revised criteria are established ... and any determination that an individual is not under a disability by reason of a mental impairment in a reconsideration of, hearing on, review by the Appeals Council of, or judicial review of a decision rendered in any continuing eligibility review ... shall be redetermined by the Secretary as soon as feasible after the date on which such criteria are so established, applying such revised criteria.

Disability Benefits Reform Act, P.L. No. 98–460, § 5(c)(1), 98 Stat. 1794, 1801–02.

When the appeals council denied plaintiff's request to review the ALJ's decision on March 13, 1985, the ALJ's opinion became the Secretary's

The statutory language, however, requires remand only of cases finding nondisability upon the completion of judicial as well as administrative review. As set forth below, the Court finds that by the Secretary's own regulations in force at the time Odierno received his hearing, he was conclusively disabled for the period after his birthday on August 28, 1984. On the basis of the record, the Court cannot, however, determine Odierno's eligibility for the period August 1982 to August 28, 1984. Accordingly, the Court grants the Secretary's motion to remand, in part, for the period August 1982 to August 1984.

## II. Review of the Secretary's Determination.

Were the Court simply to remand this case to the Secretary to assess Oiderno's eligibility under the revised mental impairment guidelines, the SSA would not necessarily reconsider the ALJ's factual findings on either the severity of plaintiff's mental impairments or the degree of his physical limitations. After examining the record and the hearing transcript, the Court concludes that the ALJ erred in making several of the findings upon which he based his conclusion of not disabled. In the interest of economy, the Court will take this opportunity to review the Secretary's determination in its entirety rather than consider it on a second appeal in the event the ALJ determines that Odierno is not disabled under the new mental impairment regulations.

## A. Standards of Review.

The legal principles that govern the review are well settled. Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The mere presence of an impairment is not disabling within the meaning of the Act. Rather, a person may be determined to be under a disability only if his or her impairment is of such severity that the claimant is not only unable to do his or her previous work, but cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The initial burden of proving disability is on the claimant. 42 U.S.C. § 423(d)(5); *see Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982); *Carter v. Schweiker,* 649 F.2d 937, 940 (2d Cir.1981). The claimant satisfies this burden by making out a *prima facie* case, that is, by showing that his or her impairment prevents return to his or her prior employment. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). The burden then shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work that exists in the national economy and that the claimant could perform. *Id.*

In reaching a conclusion as to disability, both objective and subjective factors are to be considered. These include objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's education background, age, and work experience. *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978). These factors need not be given equal weight.

final decision. Odierno then falls within that group of claimants whose applications might be remanded for reconsideration in light of the new mental impairment guidelines. As the court in *Christensen v. Bowen,* 633 F.Supp. 1214, 1219 (N.D.Cal.1986), observed, however, a logical construction of the statute requires evaluation under the new criteria only of cases finding nondisability upon the completion of judicial as well as administrative review, as long as the review had commenced during the transition period. The district court need not remand an unfavorable decision when the administrative record before the court establishes eligibility. In this case, the Court concludes that from August 28, 1984 Odierno qualified for disability benefits. Remand for that period is unnecessary. For the period August 1982 to August 28, 1984, however the Court cannot say that the record would warrant a finding of disability under either the original or the revised Listing of Mental Impairments.

Within the Second Circuit, the "treating physician" rule establishes the weight to be given the medical opinion of the physician who has treated the claimant relative to other medical evidence, including the opinions of other physicians.

> The rule, which has been the law of this circuit for at least five years, provides that a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is; (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

*Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986) (citing *Bluvband v. Heckler,* 730 F.2d 886, 892–93 (2d Cir.1984)). The merits of this rule are not in issue. *Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986) (Secretary has made no attempt to appeal the rule to the Supreme Court and denies following policy of nonacquiescence); *Schisler v. Heckler, supra,* 787 F.2d at 83 (same).

A claimant's subjective estimation of his or her impairment does not alone suffice to establish disability. *Maisch v. Heckler,* 606 F.Supp. 982, 991 (S.D.N.Y. 1985). After weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility, the ALJ, in resolving conflicting evidence, may decide to discredit the claimant's subjective estimation of the degree of impairment. *Pascariello v. Heckler,* 621 F.Supp. 1032, 1035–36 (S.D. N.Y.1985). Nonetheless, when objective medical evidence in the record supports a claimant's complaint, the ALJ in weighing the balance must give claimant's assertions great weight. *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983); *Martinez v.*

*Heckler,* 629 F.Supp. 247, 251 (E.D.N.Y. 1986). Additionally, when the claimant testifies to a disabling condition after a long and continuous period of steady employment, his or her statements and the reasons given for no longer being able to work are entitled to "substantial credibility." *Rivera v. Schweiker,* 717 F.2d at 725; *Carrillo v. Heckler,* 599 F.Supp. 1164, 1170 (S.D.N.Y.1984); *Maggio v. Heckler,* 588 F.Supp. 1243, 1246 (W.D.N.Y.1984).

The Secretary has the duty of making the determination of disability under the principles set forth above. It is not the function of this Court, which sits in the present context as a reviewing court, to determine *de novo* whether the claimant is disabled. Assuming the Secretary has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence. If they are so supported, they are conclusive. 42 U.S.C. § 405(g). *See Rivera v. Harris, supra,* 623 F.2d at 216; *Bastien v. Califano, supra,* 572 F.2d at 912. Where evidence has not been properly evaluated because of the application of an erroneous legal standard, however, the determination of the Secretary may not be upheld. *See Marcus v. Califano,* 615 F.2d 23, 28 (2d Cir.1979). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See generally Parker v. Harris, supra,* 626 F.2d at 230–32.

### B. The Secretary's Determination.

### 1. The Severity Regulations.

The Secretary assessed whether plaintiff was suffering from a disability as defined under the Act by following a five step sequential evaluation process, of which the "severity regulations" are a part.[3] The

---

**3.** The Supreme Court has granted certiorari to decide the legality of the severity regulations.

*Yuckert v. Heckler,* 774 F.2d 1365 (9th Cir.1985),

Second Circuit recently described the process mandated by the Secretary's regulations as follows:

The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied. 20 C.F.R. §§ 404.1520(a), (b), 416.920(a), (b) (1983). If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in subpt. P, app. 1, of the social security regulations, 20 C.F.R. §§ 404.-1520(d), 416.920(d). These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied. 20 C.F.R. §§ 404.1520(d), 416.920(e). If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national econo-

my." *Decker v. Harris,* 647 F.2d 291, 298 (2d Cir.1981); 20 C.F.R. §§ 404.-1520(f), 416.920(f). If not, benefits are awarded.

*Dixon v. Heckler,* 785 F.2d 1102 (2d Cir. 1986) (quoting *City of New York v. Heckler,* 742 F.2d 729, 732 (2d Cir.1984), *aff'd,* —— U.S. ——, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)).

2. The ALJ's Decision.

In evaluating Odierno's application, the ALJ noted as step one that Odierno had not engaged in any substantial gainful activity since August 1982 when he left Jetshapes. (Tr. 10). As step two, the ALJ concluded that none of Odierno's impairments, considered alone or in combination, was severe. (Tr. 11–12). Under step three, the ALJ observed that none of the impairments, considered singly or in combination, met any of the Secretary's listing of impairments. (Tr. 12). Specifically, the ALJ held that

The claimant alleges that he is unable to work because of cardiac and pulmonary problems as well as Meniere's Disease. The objective evidence show, however, that the pulmonary impairment is mild, and that the claimant, as per his treating physician, is asymptomatic with regard to his cardiac condition. The various examinations have shown that the claimant's hypertension is well controlled. The objective evidence before me shows that the claimant's cardiac and pulmonary impairments result in few actual restrictions. The claimant, indeed, alleged that his most significant problem was the vertigo. At the hearing, the claimant testified that he experiences dizzy spells every day and that they last for

---

*cert. granted,* —— U.S. ——, 106 S.Ct. at 1967, 90 L.Ed.2d 652 (1986).
The regulations promulgated by the Secretary are the subject of litigation in another action in this district, *Dixon v. Heckler,* No. 83 Civ. 7001 (MEL) (S.D.N.Y.). In a decision dated June 22, 1984, Judge Lasker granted plaintiffs' motion for a preliminary injunction preventing the Secretary from enforcing the severity regulations. *Dixon v. Heckler,* 589 F.Supp. 1494 (S.D.N.Y. 1984), *aff'd,* 785 F.2d 1102 (2d Cir.1986).
In this case, once the ALJ determined under step two of the severity regulations that Odier-

no's impairments were not disabling, he nonetheless went on to consider, albeit superficially, steps three, four, and five, which require consideration of a claimant's age, education, past work experience, and residual functional capacity on the ability to perform other gainful work. Odierno therefore is not a member of the *Dixon* class. Judge Lasker's order requiring the Secretary to consent to or to move for remand in all cases involving *Dixon* class members, therefore, does not reach Odierno.

five to ten seconds. Additionally, objects appear to be blue. While the evidence shows that the claimant does have Meniere's Syndrome which would account for some dizziness, the current allegations of frequent episodes of vertigo are not consistent with any of the prior reports. When the claimant was hospitalized in August, 1982 for the acute episode of vertigo, he was treated for volume depletion and dehydration and was in stable condition upon discharge. Dr. Appel's examination notes refer only to a "little dizziness," and Dr. Cardona found only mild rotational vertigo of short duration. Dr. King did not suggest any change in the claimant's symptoms. The claimant's ambulation was noted to be normal and caloric testing was also normal. The objective evidence is inconsistent with claimant's suggestions of frequent episodes of vertigo. The claimant's subjective complaints were not entirely credible.

(Tr. 11–12). In contradiction to the testimony of Dr. Cohen, the Administration's vocational expert, the ALJ then went on to conclude as step four that Odierno could return to his past relevant work as a bartender. Reviewing the ALJ's decision, the Court concludes that the Secretary's determination must be reversed.

### a. Medical Evidence.

■ The record in this case contains hospital reports as well as the reports of several doctors, including those of Doctors King and Thalenberg, plaintiff's treating physi-

cians. These reports address variously plaintiff's cardiac and pulmonary conditions as well as the diagnosis of Meniere's Syndrome.

### (i) Pulmonary and Cardiac Restrictions.

In his findings, the ALJ held that "claimant has (only mild) restrictions as a result of a prior myocardial infarction as well as a mild pulmonary defect." (Tr. 13). In reaching this conclusion, the ALJ attached "little weight" to early hospital reports concerning Odierno's heart attacks because he subsequently returned to work. Additionally, the ALJ credited Dr. King's February 8, 1984 impression that Odierno had recovered from the attacks and was essentially asymptomatic. (Tr. 204–205). In light of the report by Dr. King, plaintiff's treating physician, the ALJ's conclusion that Odierno was asymptomatic as to his cardiac condition is supported by substantial evidence.

### (ii) Exertional Capabilities.

The finding on Odierno's heart condition, however, does not direct a conclusion as to his exertional capabilities. Reaching rather beyond his earlier observation that Odierno was capable of performing "work of at least a light exertional level," (Tr. 12), the ALJ found that Odierno's limitations precluded only "work involving heavy lifting, frequent bending, operating dangerous machinery or working in unprotected heights."[4] (Tr. 13). Even though both of

---

**4.** As the Secretary's regulation provide:
Physical exertion requirements.

To determine the physical exertion requirements of work in the national economy, we classify jobs as "sedentary," "light," "medium," "heavy," and "very heavy." These terms have the same meaning as they have in the *Dictionary of Occupational Titles,* published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:

(a) *Sedentary Work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Odierno's two most previous jobs would be classified as medium, this finding by the ALJ is not supported by substantial evidence on the record and must be reversed.

In making his determination, the ALJ relied almost exclusively on the consultative examination report provided by Dr. Kipnis, who had concluded on the basis of an interview that Odierno could lift a maximum of fifty pounds and could frequently carry twenty-five pounds. (Tr. 81–84). That report is entitled to little weight. When Odierno reapplied for benefits after his initial application, he asserted that he had "gotten weaker" and that "the stairs & walking causes me to get out of breath." (Tr. 123). He reiterated those complaints to the physicians he saw after leaving his job with Jetshapes. *See* Tr. at 192, 204, 208 (Doctors Weg, King, and Rainford). Odierno continues to complain as well of sharp midline chest pains that occur between one and three times a month for five to ten minutes at a time. (Tr. 192, 208). When these pains occur, plaintiff suffers from shortness of breath and diaphoresis. Relaxation usually provides relief. The Secretary's consultative physician Dr. Rainford noted in his report that Odierno suffers chronic dyspnea that might stem from a dysfunction in the left ventricle of Odierno's heart. (Tr. 209). A chest x-ray taken for Dr. Rainford suggested possible enlargement of that ventricle. *Id.*

Despite this evidence in the record, the ALJ surprisingly never questioned Odierno directly about his capabilities. At both the initial and supplemental hearings, the ALJ seemingly assumed that Odierno would be limited to light work. In posing hypothetical questions to Dr. Cohen, the ALJ described Odierno's capabilities as "the ability to, at this point, lift 20 pounds frequently. In other words, close to medium." (Tr. 28). The colloquy between the ALJ and Dr. Cohen of jobs available in the national economy concerned positions all described as light or sedentary. (Tr. 28–30, 37). In light of Odierno's assertions that he had

become weaker, statements the Court notes are entitled to credibility based on his work record, and the objective medical evidence that Odierno's physical afflictions impaired his ability to exert himself, the Court concludes that the only finding the record would support is one that Odierno could perform at best light work. The Court therefore reverses the ALJ's decision on this point.

(iii) Meniere's Syndrome.

Odierno's primary contention concerned not his cardiac condition or strength limitations, but the dizziness and memory loss that he alleged resulted from his diagnosed condition of Meniere's disease.

ALJ: What we're trying to do is we're trying to find out the limits of what your problem is, so we both have to ask you questions.

CLAIMANT: The real thing, Your Honor, I don't tell no lie, it's in my head, I get—believe me when I tell you, I won't lie to you, I get these very bad dizzy spells, they don't last long, like if I'm going down to bend my, to tie my sneaker, my shoe, all of a sudden, I'm like this, for about, I say about 5, 10 seconds, and then I get up and I'm fine.

ATTORNEY: How often does something like that happen?

CLAIMANT: It happens very often.

ATTORNEY: Every day, or—

CLAIMANT: Every day, really I thought you meant how many times a day.

ALJ: I see, I know this is going to sound like a peculiar question, but you say that you have a problem remembering, how do you know that you have a problem remembering things?

CLAIMANT: It's not a problem remembering, Your Honor, like when they ask me questions, what happened two months ago, I won't remember. I don't mean I forget things, like what day was it in the hospital, I don't remember what

(c) *Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do

medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. § 404.1567.

day it was, I know what year it was, but I couldn't tell you the date.

(Tr. 70–72). Despite Odierno's testimony, the ALJ discredited "the current allegations of episodes of vertigo [which] are not consistent with any of the prior reports," because he found Odierno "not entirely credible." (Tr. 12). The Court cannot agree with this conclusion.

Odierno's complaints at the hearing of daily dizzy spells lasting from five to ten seconds, especially when he bends down or while walking, comport with each of the physician's reports in the record. These reports document persistent attacks of vertigo, sometimes severe, which last from a few seconds to several minutes. *See* Tr. at 82–84, 192, 203, 204, 208. While Odierno's allegations of the frequency of the attacks vary somewhat, none of the physician's reports contradicts, much less rebuts his subjective complaints as he related them at the hearing. In the absence of any substantial contradictory evidence, the ALJ erroneously discredited Odierno's testimony on his vertigo. That testimony is amply supported by the clinical diagnosis of Meniere's disease. Additionally, Odierno's long and continuous work history lends his testimony substantial credibility which may not be rebutted with the conclusory assertion that Odierno was not credible. For these reasons, the Court reverses the ALJ's decision on this point.

b. Vocational Testimony and Step Four.

ALJ Portnoy recessed the July 30, 1984 hearing on Odierno's application in order to take vocational testimony. At the supplemental hearing November 6, 1984, the ALJ qualified Dr. George Cohen as the Administration's vocational expert. Dr. Cohen had analyzed the exhibits for Odierno's application prior to the hearing and then questioned Odierno about the specifics of his job fabricating jet engine parts. Dr. Cohen testified on the basis of the exhibits and his inquiries of Odierno.

ALJ: Okay. Would you please answer the questions, Dr. Cohen?

A Okay. Basic work historys within an unskilled, characterizes a medium, in terms of exertion type of activities.

Q His last occupation for Jetshapes was unskilled?

A Yes, Your Honor.

Q What about his past occupation, with respect to the Manuet Hotel, you were bartender there?

CLT: Uh-huh.

A That would be a semi-skilled occupation and also medium in level.

Q Any transferrable skills, with respect to the occupation of bartender? .

A No, Your Honor.

Q What?

A No, Your Honor.

Q Age, education?

A He's 58 years old, having a high school education that should mean that he has adequate skills, educationally.

Q Uh-huh. Let's assume that the claimant's age, education and work experience is stated and that he suffers from medical problems in which his abilities are affected to a degree from which I will indicate. Let us suppose that the ability to sit is not any good. his ability to do hand and finger objects—is not any good that (INAUDIBLE)—suppose he has a capacity to stand for 15 or 20 minutes, which is limited by dizziness. Let us suppose that the dizziness lasts for 5 to 10 seconds and his ability to walk is limited to one block or 15 minutes and that too was limited by dizziness which would last 5 to 10 seconds. Bending is limited by dizziness; memory is impaired to a mild extent. My mild, let me differentiate what I mean by mild. Mild you can conceive of it as one of being slight importance which does not affect a (INAUDIBLE) person's ability. It is to be distinguished from a moderate impairment which is an impairment which affects but does not preclude the ability to function. Moderately severe would be serious argument (phonetic) but impairment of the ability to function. Let us suppose that the memory defect—that is mild. Now can he do either of his past occupations?

A No, Your Honor.

Q Is there anything that he can do in the national economy?

A One question we have as we turn to the—whether it's sedentary or light and (INAUDIBLE).

Q One thing (INAUDIBLE). The claimant possesses the ability to, at this point, lift 20 pounds frequently. In other words, close to medium—.

A I think this claimant should be capable of handling most—.

Q Past Jobs? Are his past jobs precluded under this assumption?

A Yes.

(Tr. 27–28).

The ALJ next posited a series of hypothetical questions about which jobs within the national economy Odierno could hold, assuming certain qualifications which he articulated. At the end of Dr. Cohen's testimony, plaintiff's counsel informed the ALJ that he believed that Odierno would be found disabled upon application of the rules in Appendix 2 to subpart P of section 404.-1598, commonly referred to as the "grids," to Odierno's qualifications.[5]

ATT: And I think that in light of that, the doctor's testimony is basically that there are no jobs that Mr. Odierno can do. We have testimony that he does not have a driver's license. In fact I think that he fits very well into the grids. If we go by the original testimony that he had a high school education it's either 201.02 or 201.04 whether it's the un-

skilled job or the semi-skilled job. And if not—.

ALJ: 201.04?

ATT: It's 04 or 06 if he has a high school diploma and it's 201.02 if he does not.

ALJ: Um-hum. Okay. I see what you're saying. The nature of the impairment you have, however, is not a question of strength impairment, it's a question of a non-exertional impairment.

ATT: All right. I understand that. I know what you're saying.

ALJ: You want in the framework—you're saying that I should apply the same rules as a non-exertional impairment despite the doctor's testimony. I that what you're saying?

ATT: Yes. And in fact you may even be able to find that his symptoms meet or equal the listings with regard to many years.

(Tr. 35–36).

■ The ALJ erred in determining that Odierno could return to his past relevant work as a bartender. In response to the ALJ's hypothetical question describing Odierno's condition, the vocational expert answered clearly that he could not return to his past jobs or occupations. In the absence of substantial contradictory evidence, the opinion of a vocational expert called by the Secretary given in response to a hypothetical question that accurately summarizes a claimant's limitations binds the Secretary. *Callesto v. Secretary of HHS*, 587

---

5. To determine whether alternative, suitable occupations exist in the national economy, the Act directs the Secretary to consider the four factors, physical ability, age, education, and work experience, that Congress has identified as being relevant to this determination. 42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1520(f). To rationalize the determination of whether jobs appropriate for an individual claimant exist in the national economy, the Secretary in 1978 promulgated medical-vocational guidelines, commonly referred to as the "grids."

The [regulations] consist of a matrix of the four factors identified by Congress—physical ability, age, education and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Heckler v. Campbell*, 461 U.S. 458, 461–62, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). While the regulations direct a conclusion as to classes of claimants on the general question of whether jobs exist in the national economy, the Secretary must first assess each individual's abilities on the basis of historical facts established by evidence and testimony adduced at a hearing. *Id.* 461 U.S. at 467–68, 103 S.Ct. at 1957. Having made the preliminary findings, the Secretary is not to apply the grids mechanically in borderline situations. Claimants may challenge both the Secretary's factual findings on the matrix factors and the necessary question of whether the grids even apply to their case. *Id.*

F.Supp. 1427, 1431–32 (W.D.N.Y.1984); *see also Dionne v. Heckler,* 585 F.Supp. 1055, 1060 (D.Me.1984) (ALJ bound to accord the testimony of the vocational expert "great weight"); *Fields v. Harris,* 498 F.Supp. 478, 491–92 (N.D.Ga.1980) (while testimony of vocational expert "is not of talismanic importance," testimony is not simply to be disregarded); *Hubley v. Califano,* 499 F.Supp. 212 (W.D.Mo.1980) (in light of medical evidence and testimony of vocational expert, no substantial evidence existed on the record that plaintiff could return to former occupation).

Leaving aside for the moment that the ALJ completely ignored the testimony of his own vocational expert, the Court is astounded that the ALJ would attempt to put a partially deaf man with a memory problem who gets dizzy bending over back behind the bar anywhere. Inasmuch as ALJ Portnoy ignored a direct answer given not once, but twice to the question of whether plaintiff could return to either of his former occupations and because the record, quite simply, contains no substantial evidence to rebut Dr. Cohen's answer, the Court reverses as a matter of law the Secretary's final determination that Odier-

no could return to his past relevant work as a bartender.

C. Disposition of the Case.

On the basis of the exhibits and the testimony at both the initial and supplemental hearings, ALJ Portnoy should have concluded that Odierno could not return to work as a bartender and then have proceeded in his decision, as indeed he appeared to proceed at the November 6, 1984 supplemental hearing, to consider under the fifth step of the determination process whether Odierno could hold other jobs available in the national economy. The question now remains whether the Court should remand this case to the Secretary to make this determination.

1. The District Court's Authority to Determine Disability.

Where there are no serious gaps or uncertainties in the record and persuasive proof indicates that the claimant is disabled, reversal and remand solely for calculation of benefits rather than for redetermination is appropriate. *See Carroll v. Secretary of HHS,* 705 F.2d 638, 644 (2d Cir. 1983).[6] As Judge Lasker recently observed

---

**6.** The Secretary's argument that remand rather than reversal is appropriate even if it was not mandated by section 5 of the Disability Benefits Reform Act is unavailing. The 1980 amendment to section 205(g) of the Social Security Act was intended at least in part to limit federal court remands to the Secretary. *Carroll v. Secretary of HHS, supra,* 705 F.2d at 644; *Carter v. Schweiker, supra,* 649 F.2d at 942; *Aubeuf v. Schweiker,* 649 F.2d 107, 115 (2d Cir.1981; *see also* S.Rep. No. 96–408, 96th Cong., 2d Sess. 58 (1979), *reprinted in* [1980] U.S.Code Cong. Ad. News 1277, 1336. Under the amendment, remand is appropriate where the Secretary has misapplied the law or failed to provide a fair hearing to the claimant. In this case, the record and the ALJ's factual findings provide all four matrix factors necessary to make a determination based on the grids and the Secretary's regulations for the period after August 1984. A remand for that period then would serve no useful purpose, particularly since the Secretary has not specifically requested a remand for purposes of adducing evidence regarding Odierno's residual functional capacity. In any event, the Court finds it unlikely that the Secretary could demonstrate good cause for failure to incorporate such evidence into the record. *See Keppler v. Heckler,* 587 F.Supp. 1319, 1323–24 (S.D.N.Y. 1984).

Furthermore, numerous decisions within the Second Circuit have reversed the Secretary's factual determinations and found the claimant disabled on the basis of evidence in the record. *See Rivera v. Heckler,* 618 F.Supp. 1173 (S.D.N.Y.1985) (reversing the Secretary's determination that claimant could perform sedentary work and finding plaintiff disabled on the basis of treating physician's report and lack of any substantial, contradictory evidence); *Troupe v. Heckler,* 618 F.Supp. 248 (S.D.N.Y.1985) (reversing the Secretary's determination which was "patently contrary to the uncontroverted opinions of the consulting doctors," applying the grids and awarding benefits); *O'Grady v. Heckler,* 588 F.Supp. 850 (E.D.N.Y.1984) (reversing Secretary's determination and reinstating benefits where court found that Secretary's determination that claimant was capable of sedentary work "is not supported by even a scintilla of evidence"); *Keppler v. Heckler, supra,* (reversing a finding by the Secretary that claimant is capable of sedentary work and granting him summary judgment when uncontradicted evidence in the record established that plaintiff was disabled); *see also Yucaipi v. Bowen,* No. 85–1795, slip op. (S.D.N.Y.1986) (Lowe, J.) [Available on WESTLAW, DCTU database] (reversing the Secretary's determination as contrary to the evi-

when presented with an analagous situation, if "plaintiff is correct ... that he is entitled to summary and final judgment ... for the relief demanded in the complaint, it follows that the granting of the Government's cross-motion to remand would serve no useful or constructive purpose." *Dixon v. Heckler*, 600 F.Supp. 141, 144 (S.D.N.Y.1985); *see Carrillo v. Heckler*, 599 F.Supp. 1164, 1167–68 (S.D.N.Y. 1984) (reversal and award of benefits at district court level appropriate when ALJ ignored court's instructions on previous remand and took no new evidence). The Court then must examine the merits of Odierno's contentions that on the basis of the record he is entitled to benefits.

### 2. Applying the "Grids."

 As noted previously, once the disability evaluation process reaches the fifth step, the burden shifts to the Secretary to prove that the claimant has the residual capacity to perform alternative occupations available in the national economy. *Graham v. Heckler*, 580 F.Supp. 1238, 1240 (S.D.N.Y.1984). Although the Supreme Court has specifically upheld use of the grids so that the Secretary need not take vocational testimony on the existence of specific jobs at each claimant's hearing, the decision carefully noted that the Secretary's own regulations permit automatic application of the conclusion disability or non-disability only when the rules accurately describe a claimant's abilities and limitations. *Heckler v. Campbell, supra,* 461 U.S. at 462 n. 5, 103 S.Ct. at 1954 n. 5. In those instances where a claimant's combination of impairments cannot be matched with a square on the grid, such as when a claimant is afflicted as well with non-exertional or environmental limitations, the Secretary must give "full consideration ... to all the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight

into the adjudicative weight to be accorded each factor." 20 C.F.R. § 404, subpt. P, app. 2 § 200.00(e)(2). When a claimant has presented both strength and nonexertional limitations, the Secretary is to decide "whether a finding of disabled may be possible based on strength limitations alone." *Id.* If the strength limitations alone are not disabling, the Secretary may use the grid as a "framework" for his analysis, but he cannot rely upon the grid as the sole basis for a conclusion that suitable jobs exist in the national economy. *Id.; see Graham v. Heckler*, 580 F.Supp. 1238, 1241 (S.D.N.Y.1984).

#### a. August 28, 1984 to Present.

Leaving aside entirely the Court's disagreement with the ALJ's factual findings on and assessment of Odierno's physical condition and mental impairment, Odierno had qualified for disability benefits on the basis of the ALJ's factual findings as of his fifty-fifth birthday on August 28, 1984. Odierno is capable of only light work. On August 28, 1984, he turned fifty-five, the point at which the Secretary's regulations deem him to be of advanced age. Because he had never graduated from high school or completed formal training after that time, his education, for purpose of applying the grids, is limited. Finally, Dr. Cohen testified that he had acquired no transferrable skills from his previous occupations as a parts finisher or bartender. To summarize, as of August 28, 1984 Odierno was a man of limited education with no transferrable skills who, at his advanced age, could perform at best only light work. Rule 202.02 directs the ALJ to find a claimant with these four qualifications to be disabled. Because the grids direct the conclusion that Odierno is disabled, the Secretary had no discretion to consider testimony that jobs existed that Odierno might perform. *See Bapp v. Bowen*, 802 F.2d 601, 604–05 (2d Cir.1986). Dr. Cohen's discus-

dence in the record, applying the grids, and remanding with instructions to award benefits). *Cf. Hirsch v. Heckler*, 613 F.Supp. 267 (S.D.N.Y. 1985) (remanding to the Secretary when the

ALJ did not state specific reasons for accepting the report of the consultative examiner over that of the treating physician).

**186**

sion on filing jobs is, therefore, irrelevant to this determination. On remand, the Secretary shall calculate and award plaintiff benefits from August 28, 1984.

b. August 1982 to August 1984.

Rule 202.10 directs that a claimant with Odierno's qualifications who is between fifty and fifty-five years old, one who is closely approaching advanced age, is not disabled on the basis of strength limitations alone. On the basis of the record, the Court cannot direct a finding of disabled, but in light of Odierno's obvious physical and mental impairments which the ALJ did not adequately consider, neither could the Court uphold the ALJ's determination that Odierno is not disabled. The Court therefore reluctantly remands the case to the Secretary to redetermine disability from August 1982, the date Odierno first applied for benefits, to August 28, 1984.

### CONCLUSION

Plaintiff's motion for judgment on the pleadings is granted in part and denied in part. The Secretary's motion to remand the case is granted in part and denied in part. Because of numerous errors of law, the Court reverses and vacates the decision of the ALJ. The record in this case and the Secretary's regulations direct a conclusion that plaintiff was disabled at least from his fifty-fifth birthday on August 28, 1984. The Court remands that portion of the case solely to calculate plaintiff's past-due benefits. For the period August 1982 to August 28, 1984, the record does not conclusively establish disability. The Court therefore remands the case in order for the Secretary to make a determination for that period. On remand the Secretary shall reassess Odierno's physical condition and mental impairment in accordance with this opinion. He shall then redetermine Odierno's application for disability benefits on the basis of the revised Listing of Impairments for mental impairments. The instant action hereby is dismissed, subject to being reopened by either party within a reasonable time following proceedings by the Secretary.

It is so ordered.