**Charles CRAWFORD, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 80 Civ. 6101 (JES).**

United States District Court,
S.D. New York.

May 31, 1988.

Marc L. Ames, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for defendant; Rosemarie E. Matera, Sp. Asst. U.S. Atty., of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Charles Crawford brought this action pursuant to section 205(g) of the Social Security Act, as amended ("the Act"), 42 U.S.C. § 405(g) (1982), seeking review of a final decision of the Secretary of Health and Human Services ("the Secretary") denying plaintiff disability benefits for the period between July 28, 1979 and September 1, 1984.[1] The parties have cross-moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth below, the Court concludes that the plaintiff's motion must be denied, and that the Secretary's cross-motion should be granted.

## BACKGROUND

Plaintiff, who was born in 1934, has a sixth grade education and worked as a housing fireman for 17 years. He last worked on July 28, 1979. *See* Administrative Transcript ("Tr.") at 22–26. Plaintiff filed an application for disability insurance benefits on October 11, 1979, alleging disability due to heart trouble and ulcers. *See* Tr. at 55–58.

After the Secretary finally determined that plaintiff was not under a disability because he retained the residual functional

---

1. As discussed *infra,* the Secretary determined that plaintiff was not under a disability within the meaning of the Act until September 1, 1984, the date plaintiff attained age 50.

capacity to perform sedentary work,[2] *see id.* at 9–10; *see also id.* at 3, plaintiff brought this action. The Court subsequently remanded the case to the Secretary for a determination by the Administrative Law Judge ("ALJ") as to whether plaintiff's nonexertional impairments—chest pains and temporary blackouts—limited plaintiff's ability to perform the full range of sedentary work, and if they did, to determine whether those limitations were disabling. *See* Report and Recommendation (dated December 27, 1983) at 6–7; *see also* Order (dated April 12, 1984) at 1.[3] Contrary to these instructions, the ALJ conducted a *de novo* hearing on remand and determined that plaintiff could engage in the full range of *light* work and therefore was not disabled. *See* Tr. at 188–89.[4] Upon plaintiff's objection, the Appeals Council again remanded the case, this time to a different ALJ.[5] The Appeals Council directed the ALJ to obtain testimony from a medical advisor and a vocational expert to determine whether plaintiff's nonexer-

tional impairments would limit his ability to do work-related activities. *See* Tr. at 179.

In accordance with the Appeals Council's directive, another hearing was held on May 28, 1985, and the ALJ issued a recommended decision finding plaintiff disabled since January 15, 1980, "the date of the first conclusive medical evidence documenting the existence of a disabling impairment." *Id.* at 173; *see also id.* at 169–74. The ALJ noted that if plaintiff had the capacity to perform the full range of sedentary work, the medical-vocational guidelines (the "guidelines" or "grids")[6] would direct a conclusion of "not disabled," but found that plaintiff's ability to engage in the full range of sedentary work was "significantly compromised." *See id.* at 172. Specifically, the ALJ concluded that plaintiff's residual functional capacity for the full range of sedentary work was reduced by his inability to engage in repetitive lifting and carrying. *See id.* at 173. The ALJ

2. The Secretary has defined sedentary work as follows:
   Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
   20 C.F.R. § 404.1567(a) (1987).

3. A nonexertional impairment is described as an impairment which does not manifest itself by limitations in meeting strength requirements of jobs. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e) (1987).

4. In contrast to sedentary work, which involves lifting no more than 10 pounds at a time with occasional lifting or carrying of light objects, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. *Compare* 20 C.F.R. § 404.1567(a) *with id.* at § 404.1567(b). In addition, light work involves a good deal more walking and standing than does sedentary work.

5. The Appeals Council noted that the record was devoid of any evidence suggesting any substantial change in plaintiff's condition. Thus, there was nothing to support a conclusion different from the ALJ's previous conclusion that plaintiff

could perform only sedentary work, a finding clearly inconsistent with the ALJ's subsequent conclusion that plaintiff could do light work. *See* Tr. at 178. The Appeals Council further noted that the ALJ had not only "provided no basis for this discrepancy," but had also failed to comply with the Court Order directing consideration of whether plaintiff's ability to do sedentary work would be significantly compromised by his nonexertional impairments. *See id.*

6. The medical-vocational guidelines were promulgated by the Secretary to establish, through rulemaking, the types and numbers of jobs that exist in the national economy. *See Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The Supreme Court has described the guidelines as follows:
   They consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.
   *Id.* at 461–62, 103 S.Ct. at 1954 (footnotes omitted); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1987).

did *not* find that plaintiff's nonexertional impairments would significantly limit plaintiff's ability to perform the full range of sedentary work; indeed, the ALJ determined that plaintiff was disabled without even considering his nonexertional impairments. *See id.* at 172.

On review of these findings, the Appeals Council did not adopt the conclusions of the ALJ with respect to the ultimate issue of disability. Instead, the Council determined that although plaintiff complained of blackout spells, the record failed to demonstrate that the spells occurred with such frequency as to interfere with plaintiff's ability to perform sedentary work, noting that there were no documented syncopal[7] episodes. *See* Tr. at 165. Similarly, the Council reviewed the medical evidence tending to support plaintiff's complaints of exertional chest pains. The Council concluded, after reviewing the entire record, that "claimant, during the period at issue, retained the functional capacity to perform sedentary work and that this ability was not significantly compromised by the alleged blackout spells or by chest pain." *See id.* at 166. Therefore, the Appeals Council applied the grid and determined that plaintiff was not disabled until September 1, 1984, the date

he attained 50 years of age. *See id.*[8] This became the final decision of the Secretary.

## DISCUSSION

The only issue to be determined by the Court is whether the Secretary's decision that plaintiff was not disabled within the meaning of the Act until he reached age fifty is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986). The decision of the Secretary is conclusive if supported by substantial evidence, unless it is based on a legal error. *See Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981).

The Secretary has established a five-step sequence for evaluating disability claims. *See* 20 C.F.R. § 404.1520 (1987); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).[9] In this case, plaintiff is not engaged in substantial gainful activity, has a "severe impairment" which significantly limits his ability to work, and cannot perform his past relevant work as a housing fireman. Thus, the only dispute is with regard to the fifth step in the sequential analysis— whether there is other work plaintiff could perform. The Secretary does *not* contend that plaintiff can return to his past work.

---

**7.** Syncopal episodes are episodes characterized by "a temporary suspension of consciousness due to generalized cerebral ischema; a faint or swoon." *Dorland's Illustrated Medical Dictionary* 1514 (W.B. Saunders 25th ed. 1974).

**8.** Plaintiff's education was determined to be "limited or less" and his previous work experience to be "skilled or semiskilled—skills not transferable." *See* Tr. at 173. Therefore, during the period from the alleged onset date of July 28, 1979 through August 31, 1984, when plaintiff's age placed him in the category of a "younger person," *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h), the grid directed a finding of "not disabled," *see id.* at § 201.19. Upon attainment of age 50, however, on September 1, 1984, plaintiff was considered to be "closely approaching advanced age," and § 201.10 directed a conclusion of "disabled." *See* Tr. at 166.

**9.** The five-step sequence works as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.... [T]he claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.
*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. § 404.1520 (1987).

1. *Treating Physician Rule*

█ In this Circuit, the opinion of a treating physician on the issues of diagnosis and nature and degree of impairment is binding unless contradicted by substantial evidence. *See, e.g., Arzuaga v. Bowen,* 833 F.2d 424, 426 (2d Cir.1987); *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986). Plaintiff argues that plaintiff's treating physicians "all appear to have been of one mind that their patient was incapable of working," and that their opinions to this effect are uncontradicted by substantial evidence. *See* (Plaintiff's) Brief in Support of Motion for Judgment on the Pleadings Pursuant to Rule 12(c) ("Pl. Mem.") at 19.

█ A careful examination of the physician's notes relied on by plaintiff, however, demonstrates that no treating physician described plaintiff as permanently disabled or unable to perform any gainful employment prior to 1984, at which time plaintiff attained age fifty and after which point the Secretary agrees that plaintiff is entitled to benefits. Instead, those notes suggest only that plaintiff was unable to return to his prior "heavy" work as a housing fireman, *see, e.g.,* Tr. at 90, 111, 143–48, 290, which the Secretary concedes. Thus, contrary to plaintiff's assertion, none of these notes constitute an opinion by a treating physician that plaintiff was disabled.[10]

The only reports or notes of any doctor which suggest that plaintiff is unable to do *any* work are two notes from plaintiff's current treating physician, Dr. Nunez, written in 1984. On October 12, 1984, Dr. Nunez wrote to plaintiff's attorney, noting that plaintiff's condition remained "stable with little effort tolerance and unability (sic) to perform any gainful work." *See* Tr. at 273; *see also id.* at 274 (similar statement made in letter to plaintiff's attorney dated July 10, 1984). Plaintiff relies most heavily on this portion of that letter, contending that it constitutes the opinion of a treating physician that plaintiff has been unable to do *any* work since July 1978.

However, that statement does not, as plaintiff contends, support an argument that plaintiff's physical limitations, as described therein, would preclude his ability to do sedentary work. In that letter Dr. Nunez also stated that plaintiff "had a myocardia [sic] infarction in July 1978, ever since, he has been unable to work for chest pains, palpitations and dyspnea that occur with relatively little effort like walking five blocks, climbing two flights of stairs or carrying 15 pounds of weight." *See* Tr. at 273. Even assuming arguendo that this letter accurately described plaintiff's condition prior to September 1, 1984, the date the Secretary determined that plaintiff was disabled, the physical limitations described by Dr. Nunez are not inconsistent with an ability to do sedentary work.

Moreover, even if the statement referred to above were adequate to invoke the treating physician rule, there is clearly substantial evidence to the contrary. In addition to the recitation by Dr. Nunez of the levels at which plaintiff allegedly experiences symptoms, *see id.,* which would in itself constitute substantial evidence to the contrary from the treating physician himself, the record also contains the testimony of Dr. Hilfer, the medical advisor, indicating that plaintiff should not do physical work involving climbing, walking long distances, or lifting more than 10 pounds, limitations consistent with sedentary work. *See* Tr. at 260–61. In addition, plaintiff's residual functional capacity was evaluated in November 1979 by a physician who concluded that plaintiff could sit 8 hours, stand 8 hours, or walk 8 hours in an 8–hour work day. *See* Tr. at 119.[11] He also determined

---

**10.** The notes of plaintiff's current treating physician, Dr. Nunez, are consistent with this conclusion. Although Dr. Nunez's notes in early 1980 indicate that plaintiff "is not able to work and needs indefinite leave of absence," *see* Tr. at 157 (note dated February 6, 1980); *see also id.* at 282 (similar note dated April 1, 1980), Dr. Nunez later clarified his earlier remarks. On June 20, 1980, Dr. Nunez deemed plaintiff "unable to go back to active work in the same capacity he held in the past or any similar job that requires the same degree of physical activity or mental strain." *See id.* at 161.

**11.** Notwithstanding the inclusion of this report, dated November 29, 1979, in Exhibit 21, described as "Report of Consultative Examination —Dr. Benjamin Yentel, 11/29/79," plaintiff suggests that the signature on this report indicates that it was not prepared by Dr. Yentel. *See*

that plaintiff could lift and carry up to 10 pounds occasionally and could bend, squat, crawl and climb occasionally, and that plaintiff could use both hands for grasping, pushing and pulling, and fine manipulation. *See id.*

The above evidence, taken in conjunction with plaintiff's history of negative electrocardiograms, Holter monitors,[12] and echocardiogram, *see, e.g.,* Tr. at 92, 94–95, 156, 270–71, provides substantial evidence to overcome even a treating physician's determination of disability and supports the Secretary's decision that plaintiff retained the residual functional capacity to do sedentary work until he attained age fifty.

### 2. Applicability of the Medical–Vocational Guidelines

Because plaintiff has established that his impairments prevent him from performing his past relevant work, the burden shifts to the Secretary to prove that plaintiff still retains the residual functional capacity to perform alternative substantial work which exists in the national economy. *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986); *Berry, supra,* 675 F.2d at 467. Ordinarily, the Secretary can meet his burden by resorting to the grids. *See Heckler v. Camp-*

*bell,* 461 U.S. 458, 467–68, 103 S.Ct. 1952, 1957–58, 76 L.Ed.2d 66 (1983); *Bapp, supra,* 802 F.2d at 604. But in a case where a plaintiff suffers from nonexertional impairments which " 'significantly limit the range of work permitted by his exertional limitations,' " use of the grids is inappropriate. *See Bapp, supra,* 802 F.2d at 605–06 (quoting *Blacknall v. Heckler,* 721 F.2d 1179, 1181 (9th Cir.1983) (per curiam)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) (1987) & *id.* at § 200.00(a); *Campbell, supra,* 461 U.S. at 462 n. 5, 103 S.Ct. at 1955 n. 5. Thus, the threshold issue to be determined is whether plaintiff's alleged nonexertional impairments— chest pains and blackout spells—*significantly* limit his ability to do sedentary work.[13] If they do not, application of the guidelines was proper and the decision of the Secretary must be affirmed.[14]

Plaintiff contends, however, that because the Appeals Council directed the ALJ to take the testimony of a vocational expert and a medical advisor, the Secretary has waived the application of the guidelines and is bound by that testimony in the absence of substantial contradictory evidence. *See* Pl. Mem. at 4. Plaintiff argues that the Secretary has chosen not to rely on the

(Plaintiff's) Brief in Support of Motion for Judgment on the Pleadings Pursuant to Rule 12(c) ("Pl. Mem.") at 24, n. 16. Plaintiff is apparently suggesting that this report was prepared by a non-examining physician and therefore entitled to less weight than if prepared by Dr. Yentel, who examined plaintiff. However, even assuming *arguendo* that this report was prepared by a non-examining physician, the sum total of the evidence supporting the Secretary's determination that plaintiff was able to perform the full range of sedentary work would still be more than sufficient to overcome a treating physician's opinion to the contrary, if, indeed, such an opinion had been rendered.

**12.** A Holter monitor is "a technique for long-term recording of electrocardiographic signals continuously on magnetic tape, and replaying it at rapid speed, for scanning and selection of significant but fleeting changes that might otherwise escape notice." *Stedman's Medical Dictionary* 855 (5th unabridged lawyers' ed. 1982).

**13.** The Secretary argues that plaintiff's complaints of pain and blackout spells are "symptoms" rather than nonexertional impairments. *See* Memorandum of Law Submitted in Support of Defendant's Motion for Judgment on the

Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def. Mem.") at 22; *see also* 20 C.F.R. § 404.1529. The distinction that the Secretary attempts to draw, however, is at most one of semantics, as symptoms may also be "evidence of an impairment or a description of an impairment." *Latorre v. Bowen,* No. 85 Civ. 6284, Order at 1 (S.D.N.Y. May 19, 1986); *see Bapp v. Bowen,* 802 F.2d 601, 603, 606 (2d Cir.1986); *Gagnon v. Secretary of Health & Human Services,* 666 F.2d 662, 666 (1st Cir.1981); *Washington v. Bowen,* 646 F.Supp. 1058, 1061 (S.D.N.Y.1986).

**14.** Plaintiff argues that even if the guidelines were applicable, a finding of disability is mandated by § 201.17, which more "accurately" describes plaintiff. *See* Pl. Mem. at 16–17. Section 201.17 applies, however, to a claimant who is "illiterate or unable to communicate in English." 20 C.F.R. Pt. 404, Subpt. P, App. 2 at § 201.17. This section is thus clearly inapplicable to plaintiff, who testified that he had received six years of schooling and that he could read and write English "[f]airly well." *See* Tr. at 202.

grids and therefore has "implicitly" conceded that they are not applicable to plaintiff. *See id.* at 8.

The Court rejects that argument. In remanding the case, the Appeals Council directed that the testimony of a medical advisor be obtained to assist the ALJ in determining *the level of severity* of the plaintiff's exertional and nonexertional limitations on his ability to perform sedentary work. *See* Tr. at 179. Far from being a waiver, the inquiry required by the Appeals Council bears directly on the applicability of the grid, since the resolution of the grid's applicability requires consideration of whether nonexertional impairments "significantly limit the range of work permitted by [a claimant's] exertional limitations." *See Bapp, supra,* 802 F.2d at 605.

█ Plaintiff's argument that the vocational expert's testimony is binding must also be rejected. That testimony was essentially irrelevant. After sitting through a hearing during which plaintiff testified that he was fifty years old, *see* Tr. at 235, the vocational expert was asked and responded in the negative to the following question: "Now, based on the medical facts in this case ... [d]o you feel that there are jobs in significant numbers in the national economy that Mr. Crawford could perform?" *Id.* at 267. The vocational expert was never asked whether a younger individual (*i.e.,* a person under fifty) with plaintiff's medical history and alleged nonexertional limitations would be considered disabled. *Compare Odierno v. Bowen,* 655 F.Supp. 173, 183 (S.D.N.Y.1987). As noted above, this was the only issue in dispute, since the plaintiff's disability under the grid after age fifty was clear. The vocational expert shed no light on the question that he was supposed to assist the ALJ in resolving—whether the chest pains and blackout spells complained of by plaintiff significantly limited his ability to do the full range of sedentary work.

█ In any event, there can be little question that the Appeals Council's determination that those symptoms did not so limit plaintiff was amply supported by substantial evidence, notwithstanding the failure of the vocational expert to provide assistance with respect to this issue. The Appeals Council carefully considered the testimony regarding chest pains and blackouts, or dizziness, and determined that there was no evidence that these symptoms would interfere with plaintiff's ability to perform a wide range of sedentary work. Indeed, as the Appeals Council noted, although plaintiff was hospitalized for a week in 1983 for evaluation of complaints of dizziness for the three weeks prior to admission, no episodes of syncope or dizziness were noted subsequent to admission. *See* Tr. at 165; *see also* 270–71. Moreover, a 24–hour Holter monitor performed during that admission was "unremarkable," *id.* at 271, and the record reflects only two instances where he complained of blackouts to his doctors, *see* Tr. at 161, 312.

In addition, although the record demonstrates numerous instances where plaintiff complained of chest pains to his doctors, almost all of the references to chest pain indicated that the pain was exertional in nature, *see, e.g.,* Tr. at 112, 158, 160, 273, 313, and was not a nonexertional limitation at all, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e); *see also Quinones v. Secretary of the Department of Health and Human Services,* 567 F.Supp. 188, 191 (E.D.N.Y.1983) (back pain that limits claimant's ability to meet strength requirements of job is exertional impairment).

## CONCLUSION

For the reasons set forth *supra,* the Court concludes that the Secretary's decision is supported by substantial evidence. Thus plaintiff's motion for judgment on the pleadings is denied and the Secretary's cross-motion for judgment on the pleadings is granted. The Clerk of the Court is directed to enter judgment accordingly.

It is SO ORDERED.