**Frank PASCARIELLO, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.**

**No. 84 Civ. 8288 (DNE).**

United States District Court, S.D. New York.

Nov. 8, 1985.

Davison F. Moore, Poughkeepsie, New York (Jonathan E. Symer, of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. (Neal S. Mann, Sp. Asst. U.S. Atty., New York City, of counsel), for defendant.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Plaintiff brought this action under sections 205(g) and 1631(c)(3) of the Social Security Act, as amended ("Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), appealing a final decision of the Secretary of Health and Human Services ("Secretary"), which denied plaintiff's applications for disability insurance benefits and Supplemental Security Income ("SSI") benefits. Plaintiff has moved, and defendant has cross moved, for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). This case is hereby remanded for further consideration.

## BACKGROUND

Plaintiff, who was born March 25, 1951 [TR. 9], alleges that he was disabled as a result of injuries received on November 3, 1978, when a chimney fell on him while he was working as a roofer [TR. 10]. Specifically, plaintiff claims that as a result of residual trauma stemming from these injuries, including incontinence and subjective complaints of pain, he is incapable of performing sedentary work, and, thus, disabled within the meaning of the Act. Plaintiff's Memorandum of Law at 10–11.

Although plaintiff has completed tenth grade, he reads at a mid-elementary school level. [TR. 9]. While he has worked at a variety of jobs from 1967–1979, his social security earnings record indicates that he was unemployed much more than he was employed. [TR. 10]. During this period, he held such jobs as supermarket cashier and stock clerk; oil lubrication man and tire changer at a Sears automotive department; extruder in a plastics factory, eventually operating four machines and supervising another; gas station attendant at a full service gas station; machine operator at Slatz Federal Bearing; and as a roofer. [TR. 10].

On November 3, 1978, while working as a roofer, he was injured when a chimney fell on him. Upon hospitalization, he underwent surgery for multiple trauma, including torn mesocolon, avulsion of seromuscular layer of rectosigmoid colon and hemoperitonium. There was severe contusion of the urinary bladder. There were multiple fractures of the pelvis with displacement of the pubis symphisis and left hemipelvis. Although discharged on December 6, 1978, plaintiff's urinary symptoms had not completely cleared up and he was ambulatory with the aid of crutches. [TR. 135].

Plaintiff relies on the reports of his treating physician, Dr. Kanaar, dated April 30, 1980 [TR. 144–146]; July 25, 1983 [TR. 147–148] and November 5, 1983 [TR. 149–150]. Dr. Kanaar, upon his initial examination diagnosed the plaintiff as suffering from "[c]hronic left sacroilliac strain fol-

lowing a fractured pelvis with displacement." [TR. 146]. Additionally, he noted the plaintiff had a learning disability and a history of emotional instability that negatively impacted on his capacity for rehabilitation. [TR. 146].

On July 25, 1983, Dr. Kanaar wrote that while plaintiff was 100% disabled, as of that date, plaintiff had refused corrective surgery, commenting that such refusal was not unreasonable. Dr. Kanaar based this determination on the fact that plaintiff unexpectedly lost his daughter twelve hours after heart surgery, and the effect of this loss was to shake plaintiff's confidence in the medical profession. [TR. 147–148].

Finally, on November 5, 1983, Dr. Kanaar reported that the plaintiff's "[s]ymptoms and signs of left sacroiliac instability and stress incontinence persist." [TR. 149]. He determined the plaintiff to be totally and permanently disabled as a result of the failure of conservative treatment measures, coupled with plaintiff's refusal to submit to corrective surgery, intense pain, incontinence, illiteracy and mental retardation. [TR. 149].

Plaintiff further relies on the report of consulting psychologist Dr. Thomsen who noted that the plaintiff had trouble remaining seated for fifteen minutes [TR. 159]; the report of Dr. Josephy, who diagnosed him as incontinent [TR. 166]; and the testimony of the vocational expert, Mr. Weatherford, who stated that either the inability to concentrate due to pain or the necessity to regularly leave the work station due to incontinence would significantly reduce the number of possible jobs available to the plaintiff. [TR. 68].

Plaintiff contends that the Secretary's detemination that plaintiff is not permanently disabled is not supported by substantial evidence in that the Administrative Law Judge ("ALJ") failed to give proper weight to the testimony of the treating physician. Additionally, plaintiff maintains that the ALJ did not properly consider the plaintiff's testimony concerning his subjective pain and incontinence and failed to give proper weight to the testimony of the

vocational expert. Plaintiff's Memorandum of Law at 10–11.

Defendant contends that the findings of the ALJ are supported by substantial evidence and hence binding on this court.

As to the plaintiff's allegation of disability due to physical impairment, the Secretary contends that treating physician Kanaar's findings are contradicted by those of consulting physician Dr. Worrell who found: (1) the plaintiff's gait was within normal limits; and (2) the plaintiff had unrestricted straight leg raising and only slightly restricted lumbroscaral movement. Based on these findings, Dr. Worrel only recommended against prolonged walking or standing and lifting more than 20 pounds. [TR. 154–155].

Defendant argues that Dr. Kanaar's finds are also contradicted by the report of consulting physician Dr. Greenwald, who, while finding a marked deformity of the pubis symphysis, concluded "[n]o definite acute changes are appreciated." [TR. 156]. The Secretary argues that Dr. Kanaar's findings are further contradicted by the report of consulting psychologist Dr. Thomsen. Using the Wechsler Adult Intelligence Scale–Revised (WAIS–R), Dr. Thomsen found the plaintiff's intelligence to be within the low-normal range. Additionally, Dr. Thomsen determined plaintiff's reading ability to be at mid-elementary school level. [TR. 159].

As to the question of plaintiff's subjective pain, the Secretary contends that the ALJ's decision is both supported by Dr. Worrell's failure to find percussion pain in the vicinity of the lumbrosacral junction [TR. 154] and the ALJ's own determination based on the plaintiff's demeanor. [TR. 15].

The Secretary further maintains that there is substantial evidence supporting the ALJ's determination that plaintiff's alleged incontinence does not require a finding of disability under the act. Such evidence includes plaintiff's failure to undergo corrective surgery, his inconsistent testimony concerning the use of an incontinence prod-

uct and the ALJ's observation of the plaintiff during the hearing. [TR. 15].

## DISCUSSION

To establish his disability within the meaning of the act, plaintiff has the burden of establishing that he is unable to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d), 1382c(a)(3)(*a*); *see Parker v. Harris*, 626 F.2d 225, 230, 231 (2d Cir. 1980).

In *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982), the Second Circuit set forth a five step test to evaluate claims of disability:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix I of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work the claimant could perform.

The burden is on the plaintiff to prove steps one through four and on the Secretary to prove step five. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984).

The decision of the ALJ will be upheld as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Here, the parties accept that plaintiff has met his burden of showing that his condition satisfies steps one, two and four. However, plaintiff contends that the ALJ's determination that work exists that is within the plaintiff's capacity is not supported by substantial evidence.

In assessing a claim of disability, the Secretary must consider objective and subjective factors, including: (1) objective medical facts; (2) diagnosis or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant or other witnesses; and (4) the claimant's educational background, age, and work experience. *Bluvband* 730 F.2d at 891; *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir.1983).

Plaintiff argues that the ALJ failed to accord proper weight to the assessment of treating physician Dr. Kanaar that plaintiff was totally disabled. In evaluating the medical evidence, the Secretary is to give greater weight to the findings of the treating physician over that of consulting physicians. This is not to suggest that the ALJ cannot credit the evaluations of consulting physicans over that of the treating ones, however, to do so correct procedures must be followed. See *Bluvband*, 730 F.2d at 893, 894.

When evaluating the evidence presented by a treating physican, the ALJ is to follow a specific analytic framework: (1) the ALJ should see whether the treating physician has determined that the claimant is disabled; (2) he should then examine the record for conflicting evidence; and (3) upon finding conflicting evidence, he

should compare the probative value of the conflicting evidence with that of the treating physician. In making this comparison, the ALJ should accord greater weight to the physician who has been seeing the claimant on a regular basis than that of the consulting physician who has merely seen the claimant on a single occasion. *Id.* at 893.

Here, the ALJ correctly followed this analytic framework. He determined that the treating physician had found the claimant disabled [TR. 15]. Then the ALJ examined the record and found significant conflicting evidence: regarding Dr. Kanaar's allegation of physical disablility, the ALJ found it contradicted by the report of Dr. Worrell, [TR. 12]; as regards Dr. Kanaar's allegation of illiteracy and mental retardation, he found it contradicted in the report of Dr. Thomsen, [TR. 15]; in the claimant's work history and in the claimant's demeanor during the hearing [TR. 12]. Where, as here, the analysis uncovers contradictory evidence, the resolution of the conflict is the province of the ALJ and not this court. *Richardson v. Perales,* 402 U.S. at 399, 91 S.Ct. at 1426. Here, the ALJ considered both evidence contradicting the treating physician's medical report presented by the consulting physician and evidence contradicting the treating physicians assessment of plaintiff as "illiterate and mentally retarded," derived from standardized testing administered by the psychological consultant. [TR. 8]. In the face of such proper analysis of the evidence, this court can not say that the treating physican's assessment was not accorded sufficient weight by the ALJ. *See Mongeur v. Heckler,* 722 F.2d 1033, 1039 (2d Cir.1983).

Plaintiff further contends that the ALJ failed to give proper consideration to the plaintiff's complaints of subjective pain, placing improper emphasis upon his own observation of plaintiff during the hearing. ■ The claimant is correct in asserting that subjective statements of the individual as to pain or other symptoms, along with objective medical evidence, must be considered in making a disability determina-

tion. 42 U.S.C. § 423(d)(5). But, where, after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, the ALJ decides to discredit plaintiff's claim of severe and disabling pain, that decision is supported by substantial evidence. *Marcus v. Califano,* 615 F.2d 23 (2d Cir.1979). In the instant case, evidence of residual trauma was contradicted by clinical testing that failed to reveal a susceptibility to percussion pain in the region in question. In light of such contradictory objective medical evidence, it can not be said that the ALJ gave improper weight to his observations. As, "[t]he credibility of witnesses is a matter within the sole province of the hearing examiner to determine, and where, as here, there is evidence to support the examiner's determination, it would be improper for a reviewing court to parse the cold record for a different result." *Deyo v. Weinberger,* 406 F.Supp. 968, 974 (S.D.N.Y.1975).

Finally, plaintiff maintains that the ALJ failed to properly consider the impact of plaintiff's alleged incontinence on possible employment. Here, the ALJ disregarded the medical evidence of a rigid bladder neck and the diagnosis of Dr. Josephy of incontinence, by reliance on the fact that the plaintiff refused corrective surgery, his observation of plaintiff's demeanor, plaintiff's statements that he would occasionally drive his car and plaintiff's inconsistent testimony concerning the use of an incontinence product.

■ A claimant's decision not to undergo a corrective process is not sufficient grounds to deny disability where there is a good reason for such refusal, as, "a claimant's or beneficiary's fear of surgery may be so intense and unrelenting that it is, in effect, a contraindication to surgery." SSR 82-59 [Mar. 1982-Feb. 1983 Transfer Binder] Unemp.Ins.Rptr. (CCH) ¶ 14,359 at 2499-57. In light of plaintiff's loss of his daughter twelve hours after surgery, Dr. Kanaar advised that plaintiff's reluctance to undergo further surgery had a reasonable basis. Thus, this refusal cannot be said to provide substantial evidence as to

contradict the opinion of plaintiff's urologist Dr. Josephy that plaintiff suffers from incontinence. [TR. 166].

Nor does the ALJ's observation of plaintiff's demeanor carry such weight. While demeanor is strongly probative in weighing subjective testimony, such as that concerning pain, the presence or absence of incontinence is objective. The mere fortuity that plaintiff did not lose control over his bladder during the course of the hearing should not be found to outweigh the uncontradicted medical evidence. *See Bluvband,* 730 F.2d at 895.

While plaintiff testified that he would accompany his wife on weekly shopping trips, he further testified that he was frequently forced to return to his car due to soiled clothes. [TR. 37]. Thus, his testimony is not inconsistent with his claim of disabling incontinence.

Finally, ALJ's conclusion that disabling impact of plaintiff's alleged incontinence might be wholly remedied by use of an incontinence product is unsupported in the record. Mr. Weatherford, the vocational expert, testified that if the claimant had to absent his work station at regular intervals to relieve urinary problems it would be questionable if he could maintain the productivity level required in the sedentary work suitable for plaintiff [TR. 68]. The ALJ made no inquiry as to whether the necessity of changing soiled undershields would have a similar effect.

 In consideration of the foregoing, this court finds that the ALJ's determination that the plaintiff's alleged incontinence would not have disabling impact on his capacity for gainful employment is not supported by substantial evidence. To sustain such a determination, the ALJ must ascertain: (1) whether plaintiff's rigid bladder neck is medically sufficient to support a diagnosis of incontinence; and (2) whether the negative impact on plaintiff's productivity resulting from such incontinence is remediable by use of an incontinence product.

## CONCLUSION

The decision of the Secretary, that plaintiff's alleged incontinence does not constitute a severe impairment, is not supported by substantial evidence. This case is therefore remanded for further consideration of: (1) whether plaintiff's rigid bladder neck supports a diagnosis of incontinence; and (2) whether the negative impact on plaintiff's productivity resulting from such incontinence is remediable by use of an incontinence product.

SO ORDERED.